NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
RONALD LONG,                )
                                 )
          Plaintiff,       )        Civil Action No. 04-4327
                                 )
v.                         )        **O P I N I O N**
                                 )
ALFARO ORTIZ,           )
                                 )
         Defendant.     )
_____)

**LINARES**, District Judge.

      This matter comes before the Court on the motion for summary judgment of Defendant

Alfaro Ortiz ("Defendant" or "Ortiz") pursuant to Federal Rule of Civil Procedure 56.  No oral

argument was heard.  Fed. R. Civ. P. 78.  For the reasons herein, Defendant's motion is granted

in part and denied in part.

## BACKGROUND

**A.    Procedural History**

      The Clerk of the Court filed pro se Plaintiff Ronald Long's ("Plaintiff" or "Long")

Complaint in this Court on December 28, 2004.  The Complaint asserts various violations of

Plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983.  Plaintiff alleges three

deprivations of his constitutional rights.  First, Plaintiff alleges that his nineteen-day placement in

"temporary close custody" ("TCC") at East Jersey State Prison ("EJSP") was in retaliation for

both his criticism of the manner in which EJSP personnel handled the brutal murder of an inmate

and Plaintiff's refusal to dismiss a lawsuit brought against a prison guard.  (Compl. ¶¶ 19, 27-29).  Second, Plaintiff alleges that his placement in TCC, combined with prison officials' failure to provide Plaintiff his legal mail, deprived him of his right to meaningful access to the courts. (Compl. ¶ 26).  Plaintiff also alleges violations of the Fourteenth Amendment, alleging that he was denied access to his property without due process of law.  (Compl. ¶¶ 33-37).

Defendant then moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Court issued a Letter Opinion and Order on June 29, 2005 denying Defendant's motion.  Defendant filed the instant motion for summary judgment on February 7, 2007.  Plaintiff filed opposition on March 9, 2007.

**B.      Factual Background[1]**

Plaintiff is an inmate currently housed at EJSP in Rahway, New Jersey.  (Johnson Aff.; Ex. A.).  Defendant is an administrator at EJSP.

After submitting an inmate grievance form in December 2003 against Robert Sorrell ("Sorrell"), an EJSP Corrections Officer, Plaintiff filed a civil complaint against Sorrell in Union County Superior Court.  (Massey Aff.; Ex. C).  On July 28, 2004, Steven Johnson, executive assistant at EJSP, approached Plaintiff with a stipulation of dismissal against Sorrell, which Plaintiff rejected and refused to sign.  (Long Cert. ¶¶ 2-3).  Later that same day, Plaintiff and fellow inmate James Johnson ("inmate Johnson") were placed in TCC at EJSP for nineteen days. (Id. at ¶ 4).

On July 29, 2004, while in TCC placement, Plaintiff received the Attorney General's

_____

[1]The facts herein are undisputed unless otherwise noted.

motion[2] for an extension of time to file its brief in a separate, ongoing state criminal case involving Plaintiff.  (Pl. Answers to Interrogs. at ¶ 1; Long Dep. 14:14-16, 31:7-12).  That same day, EJSP's Special Investigations Division ("SID") began investigating Plaintiff's confinement in TCC.  (Poling Aff. ¶ 5).  During a SID interview on August 2, 2004, inmate Johnson stated that Plaintiff and he were involved in a verbal dispute regarding membership to EJSP's Veterans' Group (the "Veterans' Group").  (Id.).  Inmate Johnson stated that the dispute resulted in Plaintiff sending him an angry letter, which inmate Johnson then forwarded to a prison social worker, Tom Steckle.  (Id.).  SID Investigator Jeffrey M. Poling concluded that the inmates' placement in TCC was justified for security reasons, and recommended Plaintiff's transfer to another prison. (Id. at ¶ 12).  Mr. Poling also recommended a "keep separate" between Plaintiff and inmate Johnson.  (Def. Stmt. Mat. Facts ¶ 6).

On August 16, 2004, Plaintiff was released from TCC and transferred to South Woods State Prison ("SWSP").  (Johnson Aff.; Ex. A, Progress Notes Report at 5).  After being transferred from SWSP to Northern State Prison ("NSP") on December 6, 2004, Plaintiff was returned to EJSP on July 10, 2006.  (Id.).

DOC has implemented a three-level grievance process consisting of Inmate Request, Interview, and Administrative Remedy forms.  (Dutch Aff., ¶ 6).  Inmates may submit these remedy forms to prison officials to raise grievances, and shall receive a response within thirty days, at which point the inmate's remedies are considered exhausted.  (Id. at ¶ 10).  While incarcerated at EJSP, SWSP, and NSP, Plaintiff submitted nearly thirty grievance forms

---

[2] Dated July 9, 2004.

concerning a variety of issues.[3]  (Dutch Aff.; Ex. D).  On July 28 at EJSP, August 26 at SWSP, and December 27, 2004 at NSP, Plaintiff filed three separate inmate request forms complaining about the loss of his property after his placement in TCC.  (Id.).  Moreover, Plaintiff filed an inmate interview form on January 28, an administrative remedy form on February 25, and a request system form on March 24 2005, all at NSP, regarding the dilatory return of his legal papers.  (Id.).

After Plaintiff denied sending a threatening letter to inmate Johnson, an administrative hearing was held on June 21, 2005.  The Department of Corrections ("DOC") dismissed Plaintiff's Complaint challenging his confinement in TCC.  (Long v. Dept. of Corr., (unreported) (Docket No. A-0200-04T2) (June 29, 2005)).  Plaintiff appealed this determination to the Appellate Division of the Superior Court of New Jersey on the basis that the DOC had abused EJSP guidelines by holding Plaintiff for nineteen days in TCC instead of the mandated seventy-two hour maximum.  (Id.).  In affirming the DOC's decision on June 29, 2005, the Appellate Division reasoned that pursuant to N.J.A.C. 10A:5-7-1(b)(4), TCC may be warranted for over seventy-two hours "to protect inmates, staff, the general public, and/or security and control of the correctional facility" and that the DOC's decision was not "arbitrary or capricious."  (Id. at 2-3).  Subsequently, the Supreme Court of New Jersey denied certification to Plaintiff's motion for reconsideration of the Appellate Division's decision.  (Long v. Dept. of Corr., 186 N.J. 241 (2006)).

**DISCUSSION**

**A.      Summary Judgment Standard**

---

[3]These issues included his inmate account, legal mail, religious services, the Veterans' Group, the intercom system at NSP, and his classification status.  (Def. Stmt. Mat. Facts ¶ 12).

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324.

In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## B.      **Rooker-Feldman Doctrine**

Defendant moves for summary judgment on the Complaint, arguing that the Court lacks jurisdiction over the matter pursuant to the Rooker-Feldman doctrine set forth in the Supreme Court cases Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983). Defendant argues that the doctrine applies to bar Plaintiff's claims since in order to grant Plaintiff the relief he seeks, this Court would "in essence undermine the

-5-

determination of the state court that Long's TCC placement was justified."  (Def. Br. at 17).

Pursuant to 28 U.S.C. § 1257, the Rooker-Feldman doctrine recognizes that only the United States Supreme Court, not lower federal courts, possesses proper subject matter jurisdiction to review state court decisions.  Rooker, 263 U.S. 413; Feldman, 460 U.S. 462; see, e.g., Parkview Assoc. P'ship v. City of Lebanon, 225 F.3d 321, 324 (3d Cir. 2000).  The Rooker-Feldman doctrine bars jurisdiction if the federal claim was "actually litigated" in state court prior to filing of the federal action, or if the federal claim is "inextricably intertwined" with state adjudication.  ITT Corp. v. Intelnet Int'l Corp., 366 F.3d 205, 211 (3d Cir. 2004); Parkview, 225 F.3d at 325.

An issue is actually litigated by the state court when: "a plaintiff must present its federal claims to the state court, and the state court must decide those claims."  ITT Corp., 366 F.3d at 211 n.8 (citing Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 419 (3d Cir. 2003)).  Federal and state claims are inextricably intertwined when the judgment of a District Court would necessarily determine that a state court judgment was entered erroneously or the court takes an action that renders the state court judgment ineffectual.  ITT Corp., 366 F.3d at 211 (citing Desi's Pizza, 321 F.3d at 421-22); see also FOCUS v. Allegheny County Ct. of Com. Pl., 75 F.3d 834, 840 (3d Cir. 1996).

Nevertheless, the Supreme Court has narrowed the scope of the Rooker-Feldman doctrine to pertain to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544

U.S. 280, 284 (2005).  Yet, even if a plaintiff's "district court complaint undoubtedly overlaps [his] adjudicated state-court claims, and is based on the same operative facts" the Rooker-Feldman doctrine does not necessarily apply if the plaintiff presents an "independent claim." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 548 (3d Cir. 2006).  In Turner, the Court determined that the Rooker-Feldman doctrine did not apply when plaintiff's district court complaint raised federal claims based on injuries not caused by the state-court judgment, but attributable to defendants' FHA violations that preceded the state-court judgment based on the same underlying facts.  Id. at 54.  Moreover, in Taliaferro v. Darby Twp. Zoning Bd., the Rooker-Feldman doctrine did not preclude federal court jurisdiction over an already adjudicated state court claim when the plaintiff's due process claims "were not actually litigated in state court during the appeal from the Board's decision."  458 F.3d 181, 193 (3d Cir. 2006).

Here, although Plaintiff is a state court loser, he is not complaining of injuries caused by state court judgments.  Rather, Plaintiff is asserting an action in federal court independent from his state court action.  Similar to the circumstances in Turner, Plaintiff raises various constitutional claims in district court, which are independent of the DOC and Appellate Division judgment affirming the duration of his TCC confinement.  Like the situation in Taliaferro, Plaintiff's constitutional claims were not litigated at the state trial, which challenged only the duration of his placement in TCC.

Thus, even if Plaintiff's district court claim overlaps the state court claim in terms of some operative facts, the claim before the DOC and Appellate Division appears to concern only the *duration* of his placement in TCC, not the reason therefore and any consequences resulting from such placement.  (Massey Aff.; Ex. A).  To grant Plaintiff the relief he requests, this Court

would not have to overturn the judgment of the Appellate Division.  Rather, while the duration of

Plaintiff's confinement in TCC may have been proper, the initial placement and his alleged loss

of property and access to the Courts may have violated his Constitutional rights, providing a

basis for this Court's jurisdiction.  Accordingly, to the extent that Defendant's motion seeks

summary judgment regarding the application of the <u>Rooker-Feldman</u> doctrine, it is denied.

**B.**     **Res Judicata**

Defendant moves for summary judgment on the Complaint on the ground that Plaintiff's

claims arise out of actions that have already been subject to review by the Appellate Division.

(Def. Br. at 10).  Defendant argues that since a state court decided that Plaintiff's placement in

TCC was appropriate, Long is precluded from re-litigating his claims arising under § 1983 to the

extent that a New Jersey state court would preclude such claims.  (<u>Id.</u> at 11).

Pursuant to 28 U.S.C. § 1738, the Full Faith and Credit Act requires federal courts to give

the same preclusive effect to state court judgments that would be given in courts of the rendering

states.  <u>Allen v. McCurry</u>, 449 U.S. 90, 96 (1980) ("[I]ssues actually litigated in state-court

proceeding are entitled to same preclusive effect in a subsequent federal § 1983 suit."); <u>Kremer</u>

<u>v. Chem. Constr. Corp.</u>, 456 U.S. 461, 466 (1982) (New York State preclusion law prevented a

party from relitigating a suit in federal court after state adjudication); <u>Migra v. Warren City Sch.</u>

<u>Dist. Bd. of Ed.</u>, 465 U.S. 75, 85 (1984) (holding that § 1983 "does not override state preclusion

law and guarantee petitioner a right to proceed to judgment in state court on her state claims and

then turn to federal court for adjudication of her federal claims").  Moreover, "state law rather

than federal law determines whether a claim brought in federal court is precluded by a prior state

-8-

court adjudication." Parkview, 225 F.3d at 329.

Res judicata bars relitigation of matters that have been or could have been determined in an earlier action when: (1) the judgment in the first action is valid, final, and on the merits; (2) the parties in the later action were identical to or in privity with the parties in the prior action; and (3) the claim in the later action has developed out of the same transaction or occurrence as the first claim. Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 412 (1991); Culver v. Ins. Co. of N. Am., 115 N.J. 451, 461 (1989).

Yet, "identity of a cause of action for claim preclusion purposes is not simple." Culver, at 461. In considering whether two causes of action arise from the same transaction or occurrence, the court must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

Culver, 115 N.J. at 461; Jones v. Holvey, 29 F.3d 828, 830 (3d Cir. 1994). Utilizing these identity factors, the Third Circuit in Jones stated in dicta that a prior state court action and a federal court action were not sufficiently similar because in the first action, an inmate challenged the administrative determination of his own actions leading to his solitary confinement, while the federal action challenged the conduct of DOC officials in proceeding with the confinement. Id.

Similar to the situation in Jones, the DOC and Appellate Division decisions rendered against Plaintiff regarded EJSP's administrative decision to place Plaintiff in TCC for nineteen

days, while the federal action is challenging the decision itself to place Plaintiff in TCC as well as subsequent alleged constitutional violations stemming from such placement.  Thus, even assuming, arguendo, that the first two prongs of res judicata are satisfied, the federal claim has not developed out of the same transaction or occurrence as the state claim.  After viewing the evidence in a light most favorable to Plaintiff, the non-movant, the Court determines that there are genuine issues of material fact as to whether res judicata should bar Plaintiff's claims.

Defendant also argues that Plaintiff's claims are barred by New Jersey's Entire Controversy Doctrine.  Under the Entire Controversy Doctrine, a litigant seeking to remedy a single wrong should bring all legal theories in his first complaint, or later theories will be precluded.  Watkins, 124 N.J. at 413.  "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles."  Rycoline Prods., Inc. v. C&W Unlimited, 109 F.3d 883 (3d Cir. 1997).  Thus, the Entire Controversy Doctrine will preclude a federal claim that arose from the same transaction or occurrence underlying prior state court adjudication.

Nevertheless, if "a claim could not have been presented in the first action, then it will not be precluded in a later action."  Id. (citing RESTATEMENT (SECOND) OF JUDGMENTS § 25, comment e).  Preclusion will not bar a federal claim if the New Jersey state court would not have had jurisdiction to entertain the omitted theory.  Jones, 29 F.3d at 831 (quoting Watkins, 591 A.2d at 599).  Thus, to invoke preclusion, the prior court must have had jurisdiction to hear the federal claim, and it must be likely that the court would have exercised its jurisdiction.  Jones, 29 F.3d at 831.  In Jones, the Third Circuit held that during the appeal of a prison administrative hearing, the New Jersey Appellate Division would not have exercised jurisdiction over an

inmate's separate § 1983 claim since his complaint was sparse in details and analysis of the claim would have required evidence not available in the record at the time of the appeal of the administrative hearing.  Id. at 832.  As in Jones, the DOC and the Appellate Division would not have had evidence regarding violations of Plaintiff's constitutional rights, but only evidence regarding whether the duration of Plaintiff's TCC confinement was justified.  Accordingly, the Court finds that Plaintiff's claims are not barred by the Entire Controversy Doctrine.[4]

Accordingly, to the extent that Defendant moves for summary judgment on the issues of res judicata and the Entire Controversy Doctrine, his motion is denied.

## C.      Failure to Exhaust

Defendant moves for summary judgment and to have the Complaint dismissed based on the argument that the Complaint is barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Defendant argues that the PLRA clearly applies to Plaintiff since he was incarcerated with the DOC at the time he filed his Complaint and because Plaintiff failed to utilize the grievance procedure provided by the DOC before filing his Complaint in this Court. Defendant argues that since Plaintiff did not file any administrative remedy forms "concerning his placement in TCC, his access to the courts, his commutation credits, his family vists and/or

---

[4]The Court notes that in Nubenco v. Inversiones Barberena S.A., a court in this District held that the Entire Controversy Doctrine applied when a Nicaraguan court was precluded from exercising jurisdiction over a corporation's claims because the prior court did not lack jurisdiction over the matter.  963 F.Supp. 353, 370 (D.N.J. 1997).  There, the corporation-plaintiff knew it could bring various claims in the intial action, but instead decided to bifurcate these claims in different fora.  Id. at 371.  Unlike the situation in Nubenco, where the corporation deliberately refrained from seeking relief, Plaintiff did not have an opportunity to appeal the violation of his constitutional rights to the Appellate Division while he was appealing an administrative decision regarding the duration of his confinement in TCC.

his recreation time," claims before this Court related to these complaints are barred by the PLRA for Plaintiff's failure to exhaust his administrative remedies.  (Def. Br. at 26-27).

The PLRA requires a § 1983 prisoner plaintiff to fully exhaust his administrative remedies before proceeding to suit.  42 U.S.C. § 1997e(a).[5]  The United States Supreme Court has stated that exhaustion is mandatory, and is no longer left to the discretion of federal courts, even where the specific relief sought cannot be granted by the administrative process.  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. C.O. Churner, 532 U.S. 731, 739-40 (2001)).  Further, the Third Circuit has recognized that administrative remedies set forth in inmate handbooks must first be exhausted before a § 1983 prisoner plaintiff may proceed to suit. Concepcion v. Morton, 306 F.3d 1347, 1355 (3d Cir. 2002).

From the submissions of the Defendant, it is undisputed that the DOC maintains a "three-level Inmate Request, Interview, Administrative Remedy and Grievance Process (the "Process")."  (Dutch Aff. ¶ 6).  According to James E. Dutch, a Planning Associate III for the DOC, the Process "is designed to allow all inmates access to appropriate correctional facility administration for the review and potential resolution of complaints, concerns, questions, problems and/or grievances."  (Id.).  Every inmate may utilize the Process, but it "must be used to request a personal interview with appropriate staff to resolve their personal complaints, concerns, questions, and/or problems relative to issues or conditions within the DOC and to request administrative remedy [sic] . . . ." (Id. at ¶¶ 7-8).  After an inmate submits an administrative

---

[5]The statute provides as follows: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*."  42 U.S.C. § 1997e(a) (emphasis added).

remedy form, there is a thirty-day period for processing.  (Id. at ¶ 10).  Once the inmate receives a response to his or her administrative remedy form, his or her remedies have been exhausted. (Id.).  EJSP provides every inmate with an inmate handbook which details the polices and procedures governing the grievance Process.  (Id. at 11).

Defendant has also provided this Court with what Defendant describes as copies of all administrative remedy forms filed by Plaintiff from July, 2004 through the time Defendant filed the motion for summary judgment.  (Dutch Aff.; Ex. D).  The Court will discuss these records as relevant to its exhaustion analysis.

The Court has reviewed the remedy forms submitted by Defendant and attached to the affidavit of James E. Dutch.  A review of these forms yields several remedy forms which appear related to the claims set forth in the instant Complaint.[6]  On July 28, 2004, Plaintiff filed a form stating that "[he] would like to request to have my property."  (Dutch Aff.; Ex. D).  On December 27, 2004, Plaintiff filed a form referring to missing property.  (Id.).  On January 11, 2005, Plaintiff filed a form concerning an allegation that the prison was not processing his mail.  (Id.). On January 28, 2005, Plaintiff filed a form concerning the return of legal paper to inmates at South Woods prison.  (Id.).  The remaining remedy forms submitted by Defendant do not appear to pertain to any claims set forth in the Complaint and instead address a variety of other grievances Plaintiff brought to the attention of the DOC.

Plaintiff opposes Defendant's argument that he has failed to exhaust his administrative remedies.  Plaintiff argues that the exhaustion requirement of the PLRA does not apply to him in

_____

[6]The parties do not dispute that Plaintiff has been in the custody of the DOC during the relevant time period and that the exhaustion requirement of the PLRA thus applies to Plaintiff's claims.

the case of his confinement in TCC since it could not have remedied his complaint.  Essentially, Plaintiff argues that since the administrative remedy process only provides for a prisoner to receive a response within thirty days of submission, the process could not have assisted Plaintiff since he was only confined in TCC for nineteen days.  (Pl. Br. Opp'n at 6).  Plaintiff also argues that instead of the thirty complaints Defendant submitted to the Court, there are truly twenty more such complaints filed by Plaintiff that Defendant did not submit to the Court in conjunction with the motion for summary judgment.  (Id. at 7).  The Court finds that this last assertion of Plaintiff constitutes a material fact subject to a genuine dispute sufficient to defeat Defendant's motion for summary judgment with respect to the exhaustion requirement set forth in the PLRA.[7]

The Court determines that the fact in dispute is material since it may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  If Plaintiff's version of the facts were true, and it is established at trial that he filed additional remedy forms not submitted by Defendant in conjunction with the instant motion, these forms may very well defeat Defendant's defense of failure to exhaust.  The Court also finds that the dispute between the parties is genuine.  The evidence in the record is such that a reasonable jury may determine this factual dispute in favor of Plaintiff.  Anderson, 477 U.S. at 247-49.  Viewing the facts in favor of Plaintiff, the nonmoving party, the Court determines that summary judgment with respect to exhaustion is inappropriate at this juncture.  Accordingly, Defendant's motion for summary

---

[7]Although this statement is contained in Plaintiff's opposition brief, and not in a sworn submission, the Court must consider the motion in light of Plaintiff's pro se status.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  Accordingly, the Court will consider Plaintiff's brief as an affidavit for the purpose of determining whether any genuine issue of material fact exists sufficient to defeat Defendant's motion for summary judgment.  See Bond v. Philadelphia Bd. of Educ., 1990 WL 76462, *1 (E.D.Pa. 1990).

judgment is denied with respect to exhaustion of administrative remedies.

**D.      Retaliation**

Defendant also moves for summary judgment on Plaintiff's claim of retaliation, arguing that Plaintiff has failed to establish a prima facie claim for retaliation.  Specifically, Defendant argues that Plaintiff is unable to establish that the allegedly retaliatory conduct – placement in TCC – was not related to a penological objective.  Defendant argues that "the record clearly provides that plaintiff was placed in TCC because of a threat that he made against another inmate" and for "security reasons."  (Def. Br. at 18).  Defendant also argues that Plaintiff is unable to establish the requisite causal link between the exercise of his constitutional rights and his placement in TCC.  Plaintiff opposes Defendant's motion and argues that not only did he never write a threatening letter to inmate Johnson, but that he and inmate Johnson are close friends.  (Long Cert. ¶¶ 7, 16-20; Pl. Br. Opp'n at 5).  Plaintiff argues that prison officials "concocted a story that [Plaintiff] sent a threatening letter to another inmate" to justify his placement in TCC.  (Pl. Br. Opp'n at 2).

In the Third Circuit, a prisoner-plaintiff pursuing a retaliation claim must establish three elements to succeed with such a cause of action.  First, the plaintiff "must prove that the conduct which led to the alleged retaliation was constitutionally protected."  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (citations omitted).  Next, a retaliation plaintiff must demonstrate that "he suffered some 'adverse action' at the hands of the prison officials."  Id. (quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)).  Finally, a plaintiff must prove "a causal link between the exercise of his constitutional rights and the adverse action taken against him."  Id.

-15-

The Third Circuit has adopted the burden-shifting framework of the United States Supreme Court and applied it to prisoner plaintiff retaliation cases.  Id.  Within this framework, the plaintiff first bears the burden "of proving that his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him."  Id.  (quoting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).  Then the burden shifts to the defendant "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity."  Id.

Applying this standard to the matter herein, the Court determines that Defendant is not entitled to summary judgment on Plaintiff's claim of retaliation.  With respect to the first element, Defendant does not dispute that Plaintiff's right to speak out about the death of a fellow inmate was protected by the First Amendment.  With respect to the "adverse action" element, Defendant appears to misconstrue the applicable legal standard.  The inquiry is not whether placement in TCC was "adverse" because Plaintiff's constitutional rights were impinged by virtue of such placement.  Rather, the inquiry is whether continued placement of Plaintiff in TCC would deter the exercise of his constitutional rights going forward.  See Allah, 229 F.3d at 225.

Drawing all inferences in favor of Plaintiff, the non-moving party, the Court finds that Plaintiff has presented a sufficient amount of evidence from which a reasonable jury could conclude that Defendant penalized him based upon Plaintiff's exercise of his First Amendment rights.  First, Plaintiff swears to this Court that he never sent inmate Johnson any threatening letter.  (Long Cert. ¶ 7).  Second, Plaintiff notes that Defendant has never produced the letter in question to Plaintiff or to the Court.  Also, although Defendant justifies its decision to place Plaintiff in TCC based upon the allegedly threatening letter Plaintiff sent to Johnson, from the

record before it, the Court finds no support for such a justification.

Rather, the Court notes that not only has Defendant been unable to produce a copy of the letter, Defendant has not submitted any sworn statement from Tom Steckle, the social worker at EJSP whom Johnson allegedly turned the letter over to.  (See Poling Aff. ¶ 4).  Nor has Defendant submitted any affidavit from inmate Johnson regarding the letter.  It also appears to the Court that Defendant's "time-line" of events fails to support his assertion that the letter constituted the basis for Plaintiff's placement in TCC.  According to the record, it is undisputed that Plaintiff was placed in TCC on July 28, 2004.  However, from the Affidavit of Jeffrey M. Poling, it does not appear that the placement was investigated by EJSP staff until August 2, 2004. (Poling Aff. ¶ 8).  From Mr. Poling's sworn statement, it appears to the Court that EJSP did not learn of the existence of the letter until *after* Plaintiff had been placed Plaintiff in TCC.  Thus, at this juncture in the litigation, Defendant is unable to put forth the threatening letter as justification for Plaintiff's placement in TCC.  Such an evidentiary failing leaves the question open whether Plaintiff's placement in TCC was retaliatory in nature.

Accordingly, this Court, viewing the evidence in a light most favorable to Plaintiff, concludes that a reasonable jury could determine that Plaintiff's protected conduct was a motivating factor in Defendant's decision to place him in TCC.  The Court finds that Defendant's evidence regarding a legitimate penological objective (the threatening letter) is unsupported by the current record.  Accordingly, Defendant's motion for summary judgment is denied with respect to Plaintiff's claim of retaliation.[8]

---

[8]The Court also notes that Defendant did not address Plaintiff's retaliation claim inasmuch as it is premised upon Plaintiff's separate, earlier lawsuit against a prison guard.

**E.    Access to the Courts**

Defendant moves for summary judgment on Plaintiff's claim that he was denied access to the court system in violation of his Constitutional rights.  Defendant argues that he is entitled to summary judgment on this claim as Plaintiff has offered no evidence supporting an alleged deprivation and has failed to establish that he suffered any actual injury.  (Def. Br. at 28).  Plaintiff fails to oppose this portion of Defendant's motion.

The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.  "'[T]he touchstone . . . is meaningful access to the courts.'"  Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988) (quoting Bounds, 430 U.S. at 823) (internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828.  However, the right of access to the courts is not unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey,

-18-

518 U.S. 343, 355 (1996) (emphasis in original).

To bring a successful claim concerning access to the courts, a prisoner must also allege that he has sustained, or will imminently sustain, some type of "actual injury" because of the challenged conduct impeding access to the courts.  See Casey, 518 U.S. at 349; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  The United States Supreme Court defined "actual injury" as an impediment to a prisoner's efforts to present or pursue non-frivolous constitutional claims. See Casey, 518 U.S. at 351-53 and n.3.  Thus, to have standing to pursue an access to courts violation, an inmate would need to demonstrate, for example:

> that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

Casey, 518 U.S. at 351.  Casey further suggests that the "actual injury" requirement can only be fulfilled by the frustration of two specific types of legal claims:  (1) direct or collateral attacks upon inmates' sentences; or (2) challenges to the conditions of confinement.  See id. at 354-55.

Plaintiff's Complaint sets forth a cause of action for denial of access to the Courts. Plaintiff alleges that while confined in TCC, he was unable to timely file opposition to a motion before the New Jersey state court overseeing his criminal case.  (Compl. ¶¶ 20-21).  Apparently, the motion in question was a motion for an extension of time within which to file a brief and was filed by the Attorney General's Office for the State of New Jersey.  (Id. at ¶ 22).  Plaintiff alleges that due to his confinement he was without access to his "legal materials" and consequently was unable to respond to the State's motion.  (Id. at ¶¶ 22-25).  The state court ultimately granted the

State's motion without hearing opposition from Plaintiff. Accordingly, Plaintiff asserts that his placement in TCC "adversely impacted upon his access to the courts." (Id. at ¶ 26).

Even though Plaintiff failed to oppose this portion of Defendant's motion, where the non-moving party fails to file an opposition to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against the [non-moving] party." Fed. R. Civ. P. 56(e). The Court must still determine whether the moving party met its burden of proving that it is entitled to summary judgment. See Macias v. United States, No. 05-1445, 2006 WL 1843111, at *1 n.1 (D.N.J. June 30, 2006). Here, Plaintiff was placed in TCC for reasons unascertained at this juncture. Plaintiff alleges that as a segregated inmate, he did not have access to his legal materials and was prevented him from timely filing opposition to the State's motion for an extension of time in his state court criminal case. However, in his deposition, Plaintiff acknowledged that while allegedly unable to file his opposition, he *was* in fact able to file other motions with the same court. (Massey Aff.; Ex. B; Long Dep. 38:12-14). Further, while the state court granted the motion, Plaintiff has failed to establish how such a decision prejudiced him or resulted in an "actual injury." Accordingly, Defendant's motion for summary judgment is granted with respect to Plaintiff's claim based upon denial of access to the courts. Such claim is dismissed with prejudice.

**F.      Deprivation of Property**

Defendant moves for summary judgment on Plaintiff's deprivation of property claim and argues that such claim does not rise to the level of an actionable constitutional violation pursuant to 42 U.S.C. § 1983. Rather, Defendant argues that a § 1983 procedural due process claim is

available only when the State fails to provide an adequate postdeprivation remedy.  Defendant

argues that Plaintiff may only seek his remedy via the New Jersey Tort Claims Act, N.J.S.A. §

59:1-1 et seq. (the "NJTCA"), which provides monetary damages for the loss or deprivation of

property attributable to state officials.  Plaintiff fails to oppose this portion of Defendant's

motion.

The Due Process Clause prohibits a state or local government entity from depriving a

person of property without due process of law.  Greenholtz v. Inmates of Nebraska Penal and

Corr. Complex, 442 U.S. 1, 7 (1979).  To analyze a due process claim, a Court conducts a

familiar two-part inquiry: a Court determines whether the plaintiff "was deprived of a protected

interest, and, if so, what process was his due."  Logan v. Zimmerman Brush Co., 455 U.S. 422,

428 (1982); see also Holman v. Hilton, 712 F.2d 854, 858 (3d Cir. 1983).

Property loss caused by the intentional acts of government officials does not give rise to a

procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum

procedural due process requirements is available under state law.  See Parratt v. Taylor, 451 U.S.

527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see

also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984);

Holman, 712 F.2d at 856.[9]  The NJTCA provides a post-deprivation judicial remedy to persons

_____

[9]  In Logan, however, the Supreme Court explained that post-deprivation remedies do not
satisfy the Due Process Clause if the deprivation of property is accomplished pursuant to
established state procedure rather than through random, unauthorized action.  455 U.S. at 435-36.
But see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d 410, 421 n.12 (3d. Cir. 2000)
(citing United States v. James Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in
"extraordinary situations" such as routine deduction of fees from a prisoner's account even
without authorization, post-deprivation remedies may be adequate).  There is nothing in the
Complaint to suggest that loss of plaintiff's property was accomplished pursuant to established
state procedure; nor has this Court located any such established procedure.

who believe they were deprived of property at the hands of the State or local government.

Here, the Complaint sets forth a claim alleging that based upon his confinement in TCC, Plaintiff was denied access to his "legal property" and "all other personal property," and never had his personal and legal property returned to him.  (Compl. ¶¶ 35-36).  Although Plaintiff did not identify an attendant legal theory, in its June 29, 2005 Opinion, this Court construed this claim as alleging a violation of Plaintiff's due process rights.  However, given the post-deprivation remedy available to him, Plaintiff's recourse after he was deprived of his property would be a common-law tort action against Defendant under the NJTCA, not a cause of action pursuant to § 1983.  Plaintiff does not indicate that he attempted to file a claim pursuant to the NJTCA.

Accordingly, the Court finds that the NJTCA was available to plaintiff as a matter of law as a remedy for his alleged property loss at the hands of the defendants.[10]  See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA provided all the process that was due for Plaintiff's alleged property loss, Defendant's motion for summary judgment with respect to Plaintiff's property deprivation claim is granted.  Such claim is dismissed with prejudice.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion for summary judgment is

---

[10] It appears that Plaintiff's due process claim fails as a matter of law even if he is presently barred from pursuing his claims.  Under the NJTCA, Plaintiff would have had to have filed a tort claim notice within 90 days of accrual of the claim, as required by N.J. STAT. ANN. §§ 59:8-1 to 59:8-11.  See Logan, 455 U.S. at 437; Holman, 712 F.2d at 857 & n.3.

granted in part and denied in part.


DATED: September 20, 2007                    _/s/ Jose L. Linares_____
                                             United States District Judge